## McClurkan *versus* Byers.

| 74 | 405 |
| f 203 | ²541 |

1. An association desired to raise money, individual members made notes in large sums for that purpose and placed them in the hands of Hostetter, one of the association. The amounts being too large to negotiate, he gave his individual notes in smaller sums and retained the large notes as security for himself. Evidence tending to prove the ratification of his acts by the other members of the association was admissible in a suit upon the original notes by a holder.

2. The original notes were negotiated by an unincorporated firm of which Hostetter was a member; *Held*, that Hostetter's knowledge of the circumstances, &c., of the notes was to be imputed to the firm.

November 12th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Allegheny county* : No. 34, 35, 36, 37, to October and November Term 1873.

Four actions of assumpsit were brought September 20th 1871, against Alexander M. Byers, Alexander Nimmick, William K. Nimmick and Joseph Fleming, trading as Byers & Co., to December Term 1871 of the court below. In Nos. 168 and 171 Samuel McClurkan, in trust for the Fort Pitt Banking Company, was plaintiff, and in Nos. 169 and 170 Samuel McClurkan was plaintiff.

No. 168 was on the following note :—

"$50,000.                    Pittsburg, Pa., December 3d 1869.
*Sixteen months* after date we promise to pay to the order of Dr. D. Hostetter fifty thousand dollars, without defalcation, for value received.                                        BYERS & CO.
Endorsers :—
    D. HOSTETTER,
    LOCKHART, FREW & CO.,
    D. HOSTETTER."

No. 169 was on the following note :—

"$50,000.                    Pittsburg, December 13th 1869.
*Sixteen months* after date we promise to pay to the order of Dr. D. Hostetter fifty thousand dollars, without defalcation, value received.                                    LOCKHART, FREW & CO.
Endorsed :—
    D. HOSTETTER,
    BYERS & CO.,
    SAMUEL MCCLURKAN."

No. 170 was on the following note :—

"$50,000.                    Pittsburg, December 11th 1869.
*Sixteen* months after date we promise to pay to the order of

[McClurkan *v.* Byers.]

Messrs. Lockhart, Frew & Co., fifty thousand dollars, without de-
falcation, for value received.                    BYERS & Co.

Endorsed :—
LOCKHART, FREW & CO.,
D. HOSTETTER,
SAMUEL McCLURKAN."

No. 171 was on the following note :—

" $50,000.                    Pittsburg, December 16th 1869.

*Sixteen months* after date we promise to pay to the order of Dr.
D. Hostetter fifty thousand dollars, without defalcation, for value
received.                    LOCKHART, FREW & Co.

Endorsed :—
D. HOSTETTER,
BYERS & CO.,
D. HOSTETTER."

The four cases were tried together January 13th 1872, before
Sterrett, P. J.

The plaintiff gave the notes and protests in evidence, and rested.

For the defendants, A. Nimmick, one of them, testified that in
the fall of 1869 there was a " firm association known as the Pitts-
burg Petroleum Oil Company, composed of Byers & Co., Kirk-
patrick & Lyons, Lockhart & Frew, Samuel Lewis, D. Hostetter
and A. Hertz & Co. Their business was to buy and sell'oil. In
the fall of 1869 the association proposed to borrow money in
Philadelphia to be used in their business. For this purpose six
notes for $50,000 each were drawn, in which the day of month
and time they had to run were left blank ; two were drawn by
Byers & Co., two by Lockhart & Frew, and two by D. Hostetter
& Co. Four of these notes were those in suit. Witness signed
for Byers & Co., and Frew for Lockhart & Frew. They hoped to
borrow on four months time, but lest they should have to make the
time shorter, the blanks were left. About the 18th of December
1869 witness and Hostetter went together to Philadelphia, and,
finding that they could not negotiate the notes on account of their
large amount, they made an arrangement with Charles Lennig, by
which they could obtain the money on notes of $10,000 each ;
witness drew in the name of Byers & Co. ten $10,000 notes to the
order of Lockhart, Frew & Co., and delivered them to Hostetter to
have negotiated ; Hostetter agreed not to use their two $50,000
notes ; witness gave as collateral to Lennig forty-three bonds of the
Allegheny Valley Railroad Company, which had been borrowed by
the Pittsburg Petroleum Company; they received on that day
through Lennig from $40,000 to $50,000, and also from Warden,
Frew & Co. $50,000, all which witness deposited in Iron City
Bank at the .disposal of the Pittsburg Petroleum Company, of

[McClurkan v. Byers.]

which Mr. Frew was the disbursing agent; witness next heard of the notes of Byers & Co. a few days before they were due, about sixteen months afterwards; witness never authorized Hostetter to fill the blanks or negotiate the notes; the Pittsburg Petroleum Company were to take up the notes which were negotiated.

Joseph Fleming, a defendant, testified, corroborating Nimick as to the making the blanks, &c., of the $50,000 notes and their purpose; he also testified that he returned with Hostetter on Christmas 1869, went to Lockhart & Frew's office, which was closed, and they could not get in; they went to the Iron City Bank and left some money there, and afterwards Frew and witness were at Lockhart & Frew's office when Hostetter came in; Frew asked him if he had the $50,000 notes with him; Hostetter said he had not; they were in his satchel, and he would return them the first time he came up. Witness never authorized Hostetter to fill up and negotiate the notes; the first he heard of them was about the time they were falling due.

William Frew testified that he was the purchasing agent of the company; money was paid to him as it was needed; that he got $98,500 from Hostetter on the 21st of December 1869, and gave him a receipt, which was produced. At the interview with Hostetter at the office of Lockhart & Frew on Christmas, Hostetter said he could not use the $50,000 notes in Philadelphia; he had to send for collaterals; that he had the notes at his office and would return them shortly.

W. H. Nimick, a defendant, testified that in 1870 there was considerable amount of accommodation paper for the use of the company made and endorsed by the members of the association. In November 1870, it was arranged that each of the partners should take up $100,000 of this outstanding paper, a portion of which Hostetter was to pay at the Mechanics' Bank in Pittsburg. There had been a quarrel amongst the partners in May or June 1870, which still continued. Byers & Co. did not pay either note of $50,000, which was allotted to them to pay; Hostetter sued them on one and recovered. There was evidence that the paper allotted to Hostetter to take up, was in Philadelphia, and in the Mechanics' Bank in Pittsburg, four pieces maturing there in December 1870; the day before these were due, Hostetter said he would not pay them.

The defendants called the plaintiff. He testified that he was president of the Fort Pitt Banking Company, which was not incorporated; Hostetter was a member of the company and a director. In 1869 witness knew there was some difficulty in the Petroleum Company about the oil Hostetter was to get; Hostetter about then informed him that there was difficulty about some paper of the company that was out; that there was an arrangement between Lockhart & Frew, Byers & Co. and himself, by which

[McClurkan *v.* Byers.]

each was to take up $100,000 of the paper, some of which was in the Mechanics' Bank, and which he would like to have taken out of the bank, as he did not wish Mr. Holmes, the president of the bank, to have any trouble; witness bought the notes from the Mechanics' Bank on the last day of grace. The notes in suit were discounted by the Fort Pitt Bank December 29th 1870; the blanks were filled at the time of discount in the banking-house; the proceeds of the notes were placed to Hostetter's credit. Hostetter told witness that the defendants had failed to pay the notes, and that he held the four $50,000 notes as collateral security for other notes which he had substituted for them in Philadelphia; " he went into a short history, telling me what Mr. Nimick stated about taking them on there, and their not being able to use them."

The defendants gave other evidence for the purpose of showing that the plaintiff took the notes from Hostetter with such knowledge of the circumstances connected with them as that he was not a holder without notice.

In rebuttal the plaintiff called Charles Lennig, who testified that in December 1869, he was applied to by some of the parties connected with the Petroleum Company to raise money for them, and he agreed to raise $100,000; they gave him ten notes of Byers & Co. of $10,000 each, payable to the order of Lockhart, Frew & Co., and endorsed by Hostetter, and some $140,000 of Allegheny Valley Railroad bonds, as collateral. About ten days afterwards they made a second application for more money, and there were left with him ten other notes drawn to the order of Lockhart & Frew; he raised $81,500 on these notes about the middle of January; the ten $10,000 notes on which he advanced the money were in his possession until they were paid; he issued his own notes, and these notes and the bonds were left with him as collateral; there had been received by him twenty $10,000 notes of Byers & Co., payable to the order of Lockhart & Frew, and the aggregate amount of Byers & Co.'s paper held by him was $181,500.

D. Hostetter testified that the $50,000 notes were made to raise money for the Petroleum Company (he produced the notes); the six notes were executed in Pittsburg, before witness and A. Nimick left Pittsburg on the 19th of December 1869, for Philadelphia; Nimick got the money through a negotiation with Lennig of ten $10,000 notes, and deposited it in the Iron City Bank; witness finding that he could not advantageously negotiate notes of $50,000, issued his own notes in sums of $10,000, $20,000 and $30,000, and deposited the proceeds in the Iron City Bank to the credit of Frew, the disbursing agent of the Petroleum Company, and took his receipts; he had negotiated in the whole up to that time $404,000 for the Company. Mr. Fleming, one of defendants, and witness came from Philadelphia together on Christmas day; went

[McClurkan v. Byers.]

to Lockhart & Frew's office, found it closed, went to Fleming's office, left their valises there, and deposited the money they had in the Iron City Bank. Witness said he did not on that day promise Frew or Fleming to return the $50,000 notes; he promised no one to return them; no one ever asked him to return them. "They knew what I held them for; they all knew I had issued my own notes and held these as collateral security. I explained to them that I had issued my own paper for the purpose of raising money; that I issued my own paper instead of these $50,000 notes; * * * the blanks were left, so that they could be filled up when I found a customer to take them, either for 4, 5, 6, 12 or 18 months; I was not limited as to that." Witness denied that there was any thing said at Lockhart & Frew's office that day about the $50,000 notes being in his satchel, and that he would return them; he was not in Frew's office that day. Notes to the amount of $404,000 being shown to the witness, he identified them as notes drawn by him. The witness testified that the first arrangement was "that we were to pay the debts and divide the oil. When I found I was paying more than my oil amounted to, I insisted on getting the Bell tank. Byers opposed my getting that and said Frew should give it out of the Brilliant Works. * * * I received 38,000 barrels, and to go on with the arrangement I was to have 8000 or 10,000 barrels in the Bell tank. This was refused. I had been paying regularly until they refused me the oil, and that was the occasion of my stopping payment of what I had agreed to pay the Mechanics' Bank."

The testimony for the plaintiff from Hostetter and others was very voluminous, detailing the transactions in relation to the notes in suit and their discount by the plaintiff.

By offer "G," plaintiff proposed to give in evidence the notes amounting to $404,000, identified by him as having being issued by him in Philadelphia in lieu of the notes in suit. This was objected to by defendants, rejected by the court, and a bill of exceptions sealed.

By offer "I," he proposed to give in evidence the receipt of Frew, the disbursing agent of the Petroleum Company, for the proceeds of Hostetter's notes for $404,000 issued and discounted in Philadelphia.

By offer "J," he proposed to show by Hostetter that he paid and took up with his own funds, and by his own notes in renewal, all his notes for $404,000, which he had had discounted in Philadelphia, and that he had paid the notes given in renewal of the original paper; be followed by evidence that the Petroleum Company and the defendants ratified all he had done in issuing his notes for $404,000, and the Petroleum Company received and used the proceeds of the notes with the consent of the defendants and of Lockhart & Frew.

[McClurkan *v.* Byers.]

The offers were objected to by the defendants, rejected by the court and a bill of exceptions sealed.

By offer "K," plaintiff proposed to show by Hostetter that the proceeds of the discount of the four $50,000 notes in suit by the Fort Pitt Banking Company, were applied to pay the debts and take up the paper issued for the accommodation of the Petroleum Company, which that company was bound to take up.

The offer was objected to by defendants, rejected by the court and a bill of exceptions sealed.

By offer "L," the plaintiff proposed to show by Hostetter that he discounted the notes at the Fort Pitt Banking Company to meet the notes of the Petroleum Company and notes issued by him for their accommodation, at the instance of the company and the defendants, and that he applied the proceeds to take up these notes.

The offer was objected to by the defendants, rejected by the court and a bill of exceptions sealed.

Offer "H" of plaintiff was as follows :—

"In connection with the testimony of the witness on the stand—Dr. David Hostetter—that it was a part of the arrangement between himself and Byers & Co., and Lockhart & Frew for taking up the paper of the Pittsburg Petroleum Oil Company, he (Hostetter) was to be made equal in oil belonging to said company with the other parties to the said arrangement. The plaintiffs now offer to show by the said witness that Byers & Co. took possession of and retained about 76,000 barrels of said oil, worth about $450,000; that Lockhart & Frew took possession of and retained about 74,000 barrels, while said Hostetter received only about 38,000 barrels; that said Hostetter was short in oil not less than 25,000 barrels, which he was entitled to receive and ought to have received from Byers & Co. and Lockhart & Frew under said arrangement; that said Hostetter called upon Byers & Co. and Lockhart & Frew for his full share of said oil, but they refused to let him have the same, and that this call and refusal were before the maturity of the notes at the Mechanics' Bank."

This offer was objected to by defendants, rejected by the court and a bill of exceptions sealed.

There was other evidence admitted and offers rejected; what is given with the answer to the defendants' fifth point, will sufficiently present the case and the questions decided by the Supreme Court.

The 5th point of the defendants which was affirmed was :—

The Fort Pitt Banking Company being a private partnership and not a corporation, notice to or knowledge of any one of the stockholders or partners, is notice to or knowledge of the said banking company.

Judge Sterrett in his charge said : * * *

"There is another matter suggested by one of the defendants' points, to which I have not yet adverted.

[McClurkan v. Byers.]

" It is in proof and not controverted, that in two of the, cases before you the beneficial plaintiff, the 'Fort Pitt Banking Company' is a private copartnership, unincorporated, composed of Samuel McClurkan, Dr. Hostetter and others.    In these cases the company stands in no better position than Dr. Hostetter himself would. If he could not enforce payment of these notes, as against the defendants, he could not transfer them to the copartnership of which he is a member, and then unite with them in maintaining a suit.    In other words, if the defendants have a good defence as against Dr. Hostetter, the same defence is available to them as against the firm of which he is a member, the Fort Pitt Banking Company." * * *

The verdict was for the defendants in each case.

The plaintiff took a writ of error and assigned for error, amongst others, the ruling of the court on the offering of evidence before stated, the answer to the fifth point of the defendant and the portion of the charge above given.

*J. Barton* and *T. M. Marshall,* for plaintiff in error.

*D. T. Watson* and *G. Shiras,* for Byers & Co., defendants in error.

*J. H. Hampton* and *R. Woods,* for Lockhart & Frew.

The opinion of the court was delivered, January 5th 1874, by

AGNEW, J.—In these cases, if we assume the fact to be conclusively proved that Dr. Hostetter, after failing to negotiate the four $50,000 notes in Philadelphia, was to return them to Byers & Co. and Lockhart & Frew, the rulings of the court below upon the plaintiff's offers of evidence were correct.    The evidence of the defendants did establish this fact, and also the express promise of Dr. Hostetter, after his return to Pittsburg, to surrender the notes. But when the plaintiff, in turn, came to rebut this evidence, and show a different version of the affair, he had a right to give the evidence to establish his version, and to strengthen that already before the court.    It was the right of the plaintiff to have the jury and not the court to pass upon the preponderance of the evidence. But by ruling out the evidence offered by the plaintiff, tending to prove ratification and acquiescence of the defendants of Dr. Hostetter's acts, the court in effect passed upon the facts.

The defendants had themselves called McClurkan to the stand, and in the direct examination, had extracted from him the statement of Dr. Hostetter, that the defendants had failed to pay him, and that he held these four $50,000 notes as collateral security for other notes he had substituted in place of them.    Hostetter himself testified that the four notes of $50,000 were made for the

purpose of raising money for the Pittsburg Petroleum Oil Company, a firm composed of Byers & Co., Lockhart & Frew, and himself; that the date was left blank, so as to date the notes to suit their maturing; and the place of payment was left blank because it was uncertain where the money could be had; that no arrangements were made as to the place where they were to be discounted or sold, and that it was left to his discretion to fill up the blanks as to the time, date and place of payment. He also testified that these notes being too large, he was unable to negotiate them at the same rate he could his own paper; that he issued his own notes to the amount of $404,000 in sums of $10,000, $20,000, and $30,000, and held these notes as collateral security for the payment of his own paper, and that the money he thus raised he paid over to Frew, the disbursing agent of the company, taking his receipt for the same, and specifying in it the proceeds and identical amount of each note. He further testified that he was never asked to return these $50,000 notes, and never promised to do so; that the defendants knew what he held them for—they all knew he had issued his own notes and held these as collateral securities; that he explained to them that he had issued his own paper for the purpose of raising the money, and they knew he had issued his own paper in lieu of the $50,000 notes. He at the same time produced the notes he had thus issued. The plaintiff had also given the testimony of Charles Lennig, of Philadelphia, attempting to impugn the accuracy of Mr. Nimick's testimony as to the ten $10,000 notes, negotiated by Mr. Lennig, and to show that Nimick was mistaken or his memory was at fault.

After all this testimony had gone before the jury, the plaintiff made the following offers in support of its truth, to give it effect, and to enable the jury to draw the conclusion that Byers & Co. and Lockhart & Frew had ratified or acquiesced in Dr. Hostetter holding the $50,000 notes, in security for his own notes substituted in their place and the proceeds of which they had received. The plaintiff therefore offered in evidence the receipt of Frew, the treasurer, for the money—the notes themselves amounting to $404,000—and to show that he paid all these notes with his own funds, and that the defendant and the Petroleum Oil Company ratified and approved of all that Hostetter had done in making and issuing the $404,000, and received and used the proceeds. This was all rejected. He offered also to show that he discounted the $50,000 notes with the Fort Pitt Banking Company for the purpose of paying and meeting the notes he had issued for the accommodation of the defendants, and that he applied the proceeds to their payment. These offers were also rejected. (See I, G, J, K, L.) Now it seems to be clear that if the $50,000 notes were given to Dr. Hostetter to raise money upon, at any time or place, for the benefit of the defendants and the Petroleum Oil Company, and because of

[McClurkan *v.* Byers.]

their large sums, he was compelled to substitute his own paper, raised the money, paid it over to the treasurer, took his receipt, specifying the very notes he had issued, and if he made this known to the defendants and they ratified and approved of what he had done, and enjoyed the benefits of the proceeds and knew he retained the $50,000 as his own security, and suffered him so to retain them, and to pay off his own notes out of the proceeds of the $50,000 notes which he had discounted for this purpose, it presents such evidence of consent to his right to hold the notes as his security as ought to have gone to the jury, and would have justified a verdict for the plaintiff, unless overturned or borne down by the weight of the defendants' evidence. This was a question for the jury; but by excluding all the confirmatory evidence contained in the several offers the court prevented its consideration, in effect taking the decision of the facts into its own hands. Of course this is error.

We think the court erred also in refusing the rebutting evidence of the plaintiff contained in offer H. The defendants had gone into evidence of a subsequent arrangement to divide the paper among all the parties, each to pay $100,000, and to show that Hostetter refused to pay his $100,000. The relevancy of this evidence to the action on the $50,000 notes by the plaintiff, McClurkan, is not very clear. Perhaps it was intended to infer from it that the subsequent arrangement was inconsistent with the claim to the $50,000 notes by Hostetter, as his security; and his refusal afterwards to comply was owing to a change of purpose on his part and a determination to hold the $50,000 notes which he had retained. If relevant at all, the defendants having proved his refusal to perform, as a step towards a new claim on his part, it certainly became the right of the plaintiff to rebut this evidence for the purpose of showing that Hostetter's refusal was not owing to a new determination on his part to hold the $50,000 notes, but to the refusal of the defendants to let him have his share of the oil on hand, which was the consideration, as he avers, of the arrangement by which he undertook to pay his proportion, to wit, $100,000.

There is a question, that of notice to the Fort Pitt Banking Company, not without difficulty. My first impression was that Hostetter's knowledge, as a partner in the company, was not that of the company. He seemed, in the transaction of discounting the $50,000 notes, more as a customer dealing with the company at arms' length, and his knowledge, therefore, not to be imputed to the company. But further reflection leads to the conclusion that the learned judge of the Common Pleas was right in holding that this being an unincorporated partnership, Dr. Hostetter could not put the partnership in a better position than that he himself held—that he could not transfer to his partners for the benefit of

[McClurkan *v.* Byers.]

the whole firm, a right he himself had not, to recover upon the notes, and then unite with them in maintaining the suit. It is not just that a partner should conceal facts known to him, which would defeat a recovery, and then transfer a title founded in his own want of good faith. Between himself and his partners a relation of confidence exists, which does not between him and a stranger whose note he holds unjustly. As between them and the innocent stranger, it would seem to be just that they who made their partner their agent in copartnership transactions, and confided in his integrity and good faith in his transactions with them, should rather suffer the loss than one who had intrusted him with no confidence. And they are in a better position to remedy his breach of good faith. They can charge him with the loss in his account, and hold his interest in the partnership liable to reimbursement of the money he had obtained from them by his wrong. And it is inequitable to permit him, after parting with the notes to his partners, through the wrong, to reap the fruits of his iniquity. In the case of a corporation which does business, not through its stockholders, but through officers, and which sues in a corporate name, the knowledge of a stockholder may stand on a different footing as to notice to the corporation, as held in some other courts, but on this point we give no opinion.

For the errors in excluding pertinent testimony, the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.